UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION



| | | |
|---|---|---|
| MELVIN EVANS | * | |
| versus | * | CIVIL ACTION NO. 1:04cv779GRo |
| TENET HEALTHSYSTEM, CM INC., a Delaware Corporation d/b/a GULF COAST MEDICAL CENTER | * * | |

### MEMORANDUM IN SUPPORT
### OF MOTION TO STAY AND COMPEL ARBITRATION

Defendant, Tenet Healthsystem CM, Inc. d/b/a Gulf Coast Medical Center ("GCMC"), submits this memorandum in support of its motion to stay the captioned action and compel arbitration.

### Statement Of The Case

Plaintiff, Melvin Evans ("Evans"), is a former employee of GCMC, a hospital affiliated with Tenet Healthcare Corporation ("Tenet"). GCMC terminated Evans' employment along with the employment of 24 other employees in a reduction in force on August 13, 2003.

In this action, Evans asserts claims for race, sex, and age discrimination, negligent and intentional infliction of emotional distress, and negligence *per se*. It is undisputed that all of Evans' claims relate to and arise out of his employment with GCMC and/or the termination of such employment.

GCMC asserts that Evans' claims against it are subject to binding arbitration under the Federal Arbitration Act in accordance with an arbitration agreement signed by Evans. GCMC has requested that Evans honor his commitment to arbitrate, but Evans has declined to do so.

Thus, GCMC has been forced to file this motion seeking an order compelling arbitration of Evans' claims.

## Facts

During Evans' employment with GCMC, all employees of GCMC received a copy of and were governed by the policies in GCMC's employee handbook. *Ex. 1, Handbook Excerpt; Ex. 2, Affidavit of Maureen H. Broussard.* The employee handbook informs GCMC employees of the hospital's Fair Treatment Process ("FTP"), which requires employees to submit all claims and disputes concerning their employment to a multi-step grievance process and, ultimately, to final and binding arbitration. The FTP provides that:

> Your decision to accept employment or to continue employment with the company constitutes your agreement to be bound by the FTP. Likewise, the company agrees to be bound by the FTP.

*Ex. 1 at p. 81.* The FTP explains the four steps preceding arbitration, and it also explains the arbitration process:

> If you do not accept the decision reached in Step 4, then you have the right to submit the problem or dispute to final and binding arbitration. The arbitration process is limited to disputes, claims or controversies that a court of law would be authorized or have jurisdiction over to grant relief and that in any way arise out of, relate to or are associated with your employment with the Company or the termination of your employment. In such cases, an impartial and independent arbitrator -- chosen by agreement of both you and the Company -- will be retained to make a final decision on your dispute or claim, based on application of Company policies and procedures and applicable law. The arbitrator's decision is final and binding on you and the Company.

*Ex. 1 at p. 85.*

All GCMC employees, including Evans, were required, *as a condition of employment*, to agree to be bound by the mandatory arbitration provisions contained in the GCMC employee

-2-

550587_1

handbook. On January 10, 2002, Evans executed an agreement to submit any and all claims and disputes related in any way to his employment at GCMC to the FTP and, ultimately, to binding arbitration. The relevant portion of Evans' agreement states:

> I hereby voluntarily agree to use the Company's Fair Treatment Process and to submit to final and binding arbitration any and all claims and disputes that are related in any way to my employment or the termination of my employment with Tenet. I understand that final and binding arbitration will be the sole and exclusive remedy for any such claim or dispute against Tenet or its parent, subsidiary or affiliated companies or entities, and each of its and/or their employees, officers, directors or agents, and that, by agreeing to use arbitration to resolve my dispute, both the Company and I agree to forego any right we each may have had to a jury trial on issues covered by the Fair Treatment Process. I also agree that such arbitration will be conducted before an experienced arbitrator chosen by me and the Company, and will be conducted under the Federal Arbitration Act and the procedural rules of the American Arbitration Association ("AAA").

*Agreement attached as Ex. 3, at para. 4.*

The FTP and Evans' arbitration agreement both expressly provide that FTP arbitrations are governed by the Federal Arbitration Act, 9 U.S.C. § 1, *et. seq. Ex. 1 at p. 90; Ex. 3 at para. 4.* The arbitrations provided for under the FTP are conducted by the American Arbitration Association in accordance with its procedures. Impartial arbitrators are selected by the parties in accordance with the due process procedures provided by the Association. *Exs. 1 and 3.* GCMC is ready and willing to arbitrate to final and binding decision all of the claims asserted in Evans' lawsuit.

## Law and Argument

GCMC submits this motion pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, which is specifically referenced in Evans' agreement to arbitrate. *Ex. 3 at para. 4.* The federal and Mississippi authorities cited below clearly establish that Evans' agreement to

arbitrate employment-related claims is governed by the FAA and, thus, this court must stay the instant action and compel Evans to arbitrate his claims against GCMC.

### A. The FAA Requires That Courts Rigorously Enforce Agreements To Arbitrate.

The FAA directs that courts rigorously "enforce agreements to arbitrate." 9 U.S.C. § 1 *et. seq. See also, Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 132 S. Ct. 1302, 149 L.Ed.2d 234 (2001); *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26 (1991) (claim of age discrimination subject to compulsory arbitration), citing *Moses H. Cone GCMC Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983); *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 225-26 (1987); *May v. Higbee Company,* 372 F.3d 757 (5th Cir. 2004) (Title VII sex discrimination claim against employer and manager subject to arbitration); *Rojas v. TK Communications, Inc.,* 87 F.3d 745, 747 (5th Cir. 1996) (sexual harassment claim under Title VII subject to arbitration); *Bender v. A.G. Edwards & Sons, Inc.,* 971 F.2d 698 (11th Cir. 1992); *Alford v. Dean-Witter Reynolds, Inc.,* 939 F.2d 229, 230 (5th Cir. 1991) (Title VII claim must be arbitrated); *Satarino v. A.G. Edwards & Sons,* 941 F. Supp. 609, 612-13 (N.D. Tex. 1996) (ADA and FMLA claims subject to arbitration); *Crawford v. West Jersey Health Systems,* 847 F. Supp. 1232 (D.N.J. 1994) (enforcing employment agreement requiring health care employee to arbitrate sex and age discrimination claims).

The FAA also mandates a stay of the trial of any suit that is referable to arbitration, "until such arbitration has been had," and requires the court to order the parties to proceed to arbitration. 9 U.S.C. § 3. In fact, any suit involving claims subject to arbitration *must* be stayed. *Id.* The Supreme Court has created a strong presumption of enforceability of arbitration agreements. *Green Tree Fin. Corp.-Ala. v. Randolph,* 531 U.S. 79, 89-90, 121 S.Ct. 513, 521 (2000).

In accordance with the FAA, the Mississippi Supreme Court has explicitly stated that Mississippi courts should respect the right of parties to agree to arbitration, and that "[u]nless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue, then a stay pending arbitration should be granted." *Russell v. Performance Toyota, Inc.*, 826 So. 2d 719, 722 (Miss. 2002).

**B.     The FAA's Requirement Of A "Written Provision" To Arbitrate Has Been Satisfied.**

Arbitration is a matter of contract, and can be compelled under the FAA if there is a written agreement that evidences a transaction involving interstate commerce. 9 U.S.C. § 2; *Neal v. Hardee's Food Systems, Inc.*, 918 F.2d 34, 37 (5th Cir. 1990). The FAA specifically requires only that there be a "written provision" to arbitrate a dispute. 9 U.S.C. § 2. In fact, the written provision need not even be signed. *Valero Refining, Inc. v. M/T Lauberhorn*, 813 F.2d 60, 64 (5th Cir. 1987); *Genesco v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987); *First Citizens Municipal Corp. v. Pershing*, 546 F. Supp. 884, 887 (N.D. Ga. 1982).

During his employment with GCMC, Evans was advised of Tenet's FTP, its requirement of binding arbitration of employment-related disputes, and the fact that he was subject to the policy as a condition of his employment. He signed an agreement to submit all employment-related claims to final and binding arbitration. *Ex. 3*. Thus, it is clear that there is a written provision to arbitrate this dispute.

**C.     All Of Evans' Claims Are Within The Scope Of The Arbitration Provision.**

Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643,

650 (1986); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *Russell, supra*, 826 So. 2d at 722.

Evans alleges in his Complaint that GCMC is liable under a variety of theories for mistreating him in connection with his employment and wrongfully terminating his employment. The jurisprudence establishes that Evans' agreement to arbitrate these employment-related claims should be enforced. As the United States Supreme Court held in *Circuit City*, which, like this case, involved claims of employment-related torts:

> The Court has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law; as we noted in *Gilmer*, [b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.

532 U.S. at 123, 121 S. Ct. at 1313. The same rationale applies to Evans' employment-related claims.

After *Circuit City*, there can be no doubt that Mississippi courts must enforce arbitration agreements involving employment-related claims. Mississippi's federal district courts routinely compel arbitration in such cases.

**The enforceability of the very same arbitration agreement at issue in this case was affirmed by this Court** in *Underwood v. Tenet Healthsystem CM, Inc.*, Civil Action No. 1:01CV 384GR. In *Underwood*, the plaintiff was another employee of GCMC who sued GCMC alleging violations of Title VII and state law for racial discrimination, hostile work environment, intentional infliction of emotional distress, retaliation, and negligent supervision. GCMC moved to dismiss the lawsuit and compel Underwood to pursue his claims via arbitration based on the same arbitration agreement executed by Evans. After noting that the issue of whether

Underwood was required to arbitrate his claims was governed by the FAA, this Court found a written arbitration agreement which encompassed all of Underwood's claims. Further, the Court found that "there are no legal constraints external to the parties' agreement that would foreclose the arbitration of those claims." *Copy of Underwood decision attached as Ex. 4.*

Likewise, in *Figueroa v. W-W Automobiles,* the United States District Court for the Northern District of Mississippi compelled arbitration of an employee's race and national origin discrimination claims under Title VII. 2002 WL 31992188, *1 (N.D. Miss. 2002). *Copy of Figueroa opinion attached as Ex. 5.* As the employee signed an arbitration agreement that "all claims, demands, disputes, or controversies of every kind or nature arising from, concerning, or relating to any of the negotiations or applications involved in your application for employment...and resulting employment," the court dismissed the employment discrimination lawsuit and compelled arbitration. The court also rejected the employee's argument that the arbitration agreement was unconscionable. *Id.* at *3.

Further, in *Green v. W.R.M. & Associates,* an employee of ServiceMaster signed an acknowledgement form that she had read and agreed to his employer's mandatory arbitration policy, which required arbitration of: "(1) Any dispute regarding the arbitrability of any such claim; (2) Any dispute regarding this Agreement, including but not limited to its enforceability, scope or terms; (3) ...[any dispute including] but [] not limited to...claims for discrimination." 174 F. Supp. 2d 459, 463 (N.D. Miss. 2001). Despite the signed acknowledgement, the employee sued his employer, alleging various federal and state-law claims for race discrimination and sexual harassment. As the parties had agreed to arbitrate any employment dispute, the court compelled arbitration and stayed the lawsuit pending arbitration. *Id.* at 462. *Green opinion attached as Ex. 6.*

## Conclusion

Evans entered into a mutually binding agreement requiring arbitration of all claims related to his employment. In accordance with the mandate of the Federal Arbitration Act, and the federal and state jurisprudence enforcing said mandate, the Court should grant GCMC's motion to stay Evans' lawsuit and compel him to submit his claims to binding arbitration.

Respectfully submitted,

_____
THOMAS J. MCGOEY II, T.A. (S. Dist Bar #30217)
ROBERT S. ANGELICO (Miss. Bar #9478)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979

COUNSEL FOR GULF COAST MEDICAL CENTER


## CERTIFICATE OF SERVICE

I certify by my signature below that on the 22nd day of December 2004, a copy of the foregoing Memorandum in Support of Motion to Stay Pending Arbitration, was served upon all counsel of record by overnight mail, postage prepaid, as follows:

Carol L. Henderson, Esq.
2610 13th Street
Post Office Box 1596
Gulfport, MS 39501

_____